U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
OCT 0 2 2006
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ANTHONY LEON GREENHILL | DOCKET NO. 06-CV-0473 |
| VERSUS | JUDGE DRELL |
| U.S.A., MR. MELTON, MR. HUNT, JENNA EPPLIN, MARK EDENFIELD, & D. LAIR | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is the pro se complaint of Plaintiff Anthony Leon Greenhill, filed *in forma pauperis* ("IFP") on March 16, 2006. Greenhill is currently incarcerated at the United States Penitentiary in Victorville, California. However, at the time of filing suit, he was incarcerated at the United States Prison in Pollock, Louisiana ("USP-Pollock"). Greenhill has raised claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), as well as <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971). The case has been referred to the undersigned for review, report, and recommendation pursuant to 28 U.S.C. § 626 and the standing orders of the court.

## STATEMENT OF THE CASE

Greenhill has alleged:

1. Plaintiff was transferred to USP-Pollock for disciplinary reasons on June 7, 2002.

2. In July, it was discovered that a mistake was made in calculating the "custody level points," and Greenhill was informed that he could be transferred back to California after "36 months clear conduct." [Doc. #1-1, p.4.)

3. On June 8, 2005, the 36 months had expired and Plaintiff should have been

transferred back to California. Also on that date, Plaintiff explained to Mark Edenfield, Jenna Epplin, and D. Lair that he was eligible for a transfer back to California. His request for transfer was denied.

4.  On July 25, 2005, Plaintiff mailed a Petition for Writ of Habeas Corpus to the federal district court.

5.  Plaintiff received an order granting pauper status in the habeas case on September 12, 2005.

6.  On September 11, 2005, Plaintiff was housed in B-Block, B3 Unit, cell 351 upper.

7.  On September 11, 2005, between 2:30 and 3:30 p.m., Correctional Officer Hunt searched Plaintiff's cell.

8.  The B3 unit officer, Mrs. Cowan, opened Plaintiff's locker at Hunt's request.

9.  Plaintiff discovered from other inmates that his locker was being searched, and Plaintiff reported to his cell.

10. Cowan and Hunt exited the cell and Hunt informed him that the Lieutenant instructed him to search the locker.

11. Later that afternoon, Plaintiff discovered that ten $1.00 postage stamps were missing from his locker.

12. The next day, Plaintiff confronted Hunt and Cowan, and both individuals denied taking stamps from Plaintiff's locker.

13. Plaintiff stopped receiving his "mandatory F.B.O.P. pay-number job." Prior to 9/11/05, his pay was between $36-$50 per month; after 9/11/05, it was $0.00 per month. Plaintiff did not file a grievance regarding the pay.

14. Plaintiff requested the video camera tape from September 11, 2005, but was informed

that it had been destroyed.

## PLAINTIFF'S CLAIMS

Plaintiff has raised claims under the Federal Tort Claims Act and Bivens. Specifically, he complains:

A. Ten one dollar stamps were wrongfully taken from his locker by USP-Pollock correctional officer Hunt.

B. The stamps were stolen in retaliation for Plaintiff filing for a writ of habeas corpus and being awarded pauper status.

C. Plaintiff has been denied access to the courts.

D. Plaintiff should be transferred back to the West Coast.[1]

## LAW AND ANALYSIS

A. FEDERAL TORT CLAIMS ACT

Plaintiff has filed suit against the United States of America based on the allegations that a USP-Pollock correctional officer, Hunt, stole ten one dollar stamps from Plaintiff's locker on September 11, 2005. The FTCA provides that district courts have jurisdiction against the United States for claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA contains an exhaustion provision whereby, before filing suit,

---

[1] Plaintiff alleged that he stopped receiving his "mandatory F.B.O.P. pay-number job." Prior to 9/11/05, his pay was between $36-$50 per month; after 9/11/05, it was $0.00 per month. However, plaintiff admits that he did not file a grievance regarding the pay, and therefore he has failed to exhaust and the claim is not properly before the court.

the claim must properly be submitted to the appropriate federal agency and finally denied. 28 U.S.C. § 2675(a). Plaintiff has provided evidence of exhaustion.

However, the FTCA also provides that **any action filed under that law shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency**, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim. See 28 USC § 2675(b). Plaintiff submitted a claim to the federal agency on Form SF-95 for property damage in the amount of ten dollars ($10) and "personal injury" in the amount of one thousand dollars ($1,000). He has alleged no newly discovered evidence or intervening facts, and therefore, the maximum amount he could potentially recover is the $1,010, as claimed in his administrative action. He cannot recover the ten thousand dollars plus court costs that he is seeking in his amended complaint.

The undersigned notes that the plaintiff has not pleaded, nor submitted any evidence of, the "personal injuries" allegedly suffered. As such, the plaintiff has failed to state a claim for personal injury damages under the FTCA[2]. Therefore, even if the plaintiff could prove that the stamps were, in fact, stolen, the most he could recover under the FTCA is ten dollars ($10) property damage.

The Prison Litigation Reform Act of 1996 (PLRA) requires that the district courts dismiss any action that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). This authority has been interpreted to confer broad discretion on the district courts to police IFP filings. See Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Neals v. Norwood, 59 F.3d 530,

---

[2]USP-Pollock regarded the $1,000 claim for "personal injury" as a claim for punitive damages. To the extent the plaintiff sought $1,000 in punitive damages, the FTCA does not provide for such relief. The United States.... shall not be liable for ... punitive damages." 28 USCS § 2674.

532-533 (5th Cir. 1995) citing Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir.1993)("District courts have broad discretion in determining whether a complaint filed IFP is frivolous so as to warrant dismissal."). In fact, **IFP litigants are no longer able to avoid paying filing fees entirely - they must now pay these on a deferred basis.** See 28 U.S.C. § 1915(b).

Nothing in the PLRA or § 1915 precludes a district court from considering the amount of relief requested when deciding whether to permit a litigant to proceed IFP. In Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995), the Court noted that § 1915 gives the judiciary "a sufficient scope of power to maintain meaningful control over the filing of in forma pauperis complaints." The overriding goal in policing IFP complaints is to ensure that the deferred payment mechanism of § 1915(b) does not subsidize suits that pre-paid administrative costs would otherwise have deterred. See Nagy v. FMC Butner, 376 F.3d 252, 258 (4th Cir. 2004). Otherwise stated, the frivolousness inquiry helps to ensure that federal resources are not wasted on "baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Thus, whether the suit alleges significant or "de minimis" damages is among the many factors a district court may take into account in determining the frivolousness of a claim. Such consideration is consistent with the goals of the in forma pauperis legislation." Deutsch, 67 F.3d at 1087. Nothing in the IFP statute, and nothing in 28 U.S.C. § 1915(e)(2)(B)(i) in particular, suggests that the de minimis value of a claim cannot be taken into account.

Given the purpose of 28 U.S.C. § 1915(e)(2), to ensure that indigent litigants do not bring suit solely because of the public subsidy available under § 1915(b), it would make little sense to invariably entertain claims without any regard to their monetary value. "Such a rigid rule might significantly increase in forma pauperis filings and it would do nothing to relieve the threat that severe docket congestion poses to adjudicative quality in federal courts." See Nagy v. FMC Butner,

376 F.3d 252, 258 (4th Cir. 2004). Moreover, a rule that monetary value bore no relevance to frivolousness would be inconsistent with the overriding purpose of the statute and with the appropriate deference due to prison authorities. See id. While some items of small value may have large meaning, the unfortunate loss of such items cannot automatically, without more, translate into the privilege of proceeding IFP.

Even though the FTCA does not establish a threshold jurisdictional amount, a complaint alleging a de minimis injury may still be dismissed as frivolous under the IFP statute. Plaintiff's claim here was for ten one dollar stamps, or $10. The investigation by the Bureau of Prisons uncovered no evidence that the USP-Pollock staff, particularly Officer Hunt, took any item(s) from Plaintiff's locker. There has been no assertion that the Plaintiff had anything else missing from his locker on this or any other occasion. The undersigned is not suggesting the court adopt a de facto jurisdictional amount. In fact, such an application of the IFP statute would be incompatible with the flexible nature of the frivolity determination. However, based on the totality of the circumstances in the instant case, and the broad discretion of the court in evaluating IFP claims, Plaintiff's claim for the ten missing one dollar stamps should be denied as frivolous and dismissed under § 1915(e)(2)(B)(i). However, the undersigned recommends that the dismissal be without prejudice so that Plaintiff remains free to file a paid complaint with these same allegations. Additionally, and as stated herein, Plaintiff's claim under the FTCA for personal injuries or punitive damages should be dismissed for failure to state a claim for which relief could be granted.

B.  BIVENS CLAIMS

In addition to the claims under the FTCA, Plaintiff has raised claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). Bivens allows a plaintiff whose constitutional rights have been violated by a federal officer to recover

damages in federal court. "Bivens is the federal counterpart of § 1983. In effect, it extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983." Abate v. S. Pac. Transp. Co., 993 F.2d 107, 110 n. 14 (5th Cir.1993). The plaintiff must show the existence of a valid constitutional violation in order to recover damages under Bivens. See id. at 110.

    1.    Retaliation

Greenhill argues that his stamps were stolen in retaliation for his filing a petition for writ of habeas corpus and because he was granted pauper status with respect to the habeas lawsuit. Plaintiff has alleged that the stamps were stolen around the same time that he received notification from the Court that he was allowed to proceed on the habeas claim *in forma papueris*. Greenhill's retaliation claim has no merit. To state a valid claim for retaliation under Bivens, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. See Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999). A prisoner must allege more than his personal belief that he is the victim of retaliation; that is, mere conclusory allegations of retaliation are not sufficient to state a claim for retaliation. See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995). The prisoner must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. See Woods v. Smith, 60 F.3d at 1166 (5th Cir. 1995); Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (5th Cir. 1989)).

Even if Greenhill could prove that the stamps were stolen by Hunt, he has not shown any intent to retaliate against him for exercising his First Amendment right. First, the petition seeking a writ of habeas corpus was filed in July 2005, and the stamps were allegedly stolen months later.

Second, the habeas corpus action[3] contested Plaintiff's underlying conviction in a California court as well as his transfer from a California prison to USP-Pollock. The habeas claim had absolutely nothing to do with Officer Hunt, the alleged thief, and Hunt had no reason to retaliate against the plaintiff because of his dispute with a California court or California prison. Additionally, the granting of pauper status only means that the plaintiff could proceed in the habeas case without the *prepayment* of fees or security. Thus, pauper status did not present a motivation for retaliation by Hunt. See 28 U.S.C. § 1915. In sum, Greenhill has failed to assert any facts or events from which retaliation could reasonably be inferred; he has offered no evidence of any plausible motivation for retaliation by Officer Hunt or any officer at USP-Pollock.

2. Access to courts

Plaintiff initially alleged that he was denied access to the courts as a result of the stolen stamps because he was forced to purchase more stamps on September 14, 2005, with "the last of his funds." [Doc. #1-1, p.41] In a subsequent amended petition, the plaintiff alleged that he "has zero access to the criminal laws and civil codes and state reporters for the State of Louisiana...." [Doc. #3, p.2] In neither claim did Plaintiff allege that he suffered any prejudice as a result of the alleged violations.

As Plaintiff noted in his complaint, prisoners have a constitutional right of access to the courts, and to establish a violation of that right, a prisoner must show that he suffered an "actual injury." [Doc. #1-1, p. 42] See Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998) (holding that, without proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim). Greenhill has not even *alleged* that he suffered any prejudice as a result of the "stolen" stamps. He

---

[3] Greenhill v. Menifee, 1:05-cv-1378, was dismissed on November 15, 2005, for failing to state a claim for which relief could be granted. An appeal is pending in the Fifth Circuit.

did not claim that he missed a deadline or that he was unable to pay postage necessary to mail any pleading to the court. In fact, he was able to file a "Motion for Copies of Documents" [Doc. #7] on October 17, 2005, a "Memorandum in Support of Petition" [Doc. #9] on October 28, 2005, an "Objection to Report and Recommendation" [Doc. #10] on November 7, 2005, and a "Notice of Appeal" [Doc. #12] on November 23, 2005, all in the habeas case that was pending in this district. He was also able to file the necessary paperwork with the Fifth Circuit in order to pursue his appeal of the Court's judgment in that case.

Then, in the amended petition, Plaintiff claimed that he "has zero access to the criminal laws and civil codes, and state reporters." However, the plaintiff did not filed a grievance pursuant to the prison's administrative remedy program complaining that he was being denied access to the law library or any law books or legal materials. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The administrative remedy program available to prisoners incarcerated in the BOP is codified at 28 C.F.R. § 542.10 *et seq.* and outlined in BOP Program Statement 1330.13, Administrative Remedy Program. The Administrative Remedies Procedure program "...applies to all inmates in institutions operated by the Bureau of Prisons ... and to former inmates for issues that arose during their confinement...." See 28 C.F.R. § 542.10(b). Therefore, Plaintiff's claim that he has no access to codes and reporters and, therefore, the courts, should be dismissed without prejudice for failure to exhaust the administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff's claim that he was denied access to the courts because of the stolen stamps should be dismissed with prejudice for failure to state a claim upon which relief could be granted as the plaintiff alleged no injury.

3. Transfer

Finally, Plaintiff claims that he was improperly transferred to USP-Pollock on a "disciplinary status transfer," and that he should be transferred back to the West Coast. First, it is well settled that a prisoner has no constitutional right to be housed in a particular facility. Olim v. Wakinekona, 461 U.S. 238, 244-46 (1983); see also 18 U.S.C. § 3621(b) ("The Bureau [of Prisons] may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another."). The transfer of a prisoner from one prison to another does not impose atypical or significant hardships in relation to the ordinary incidents of prison life and, thus, it is not actionable as a deprivation of constitutionally protected liberties. Olim, 461 U.S. at 245-46; Sandin v. Conner, 515 U.S. 472, 484 (1995). Therefore, Plaintiff's claim regarding transfer should be dismissed with prejudice.[4]

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claim against the United States under the FTCA be **DENIED** as frivolous **and DISMISSED WITHOUT PREJUDICE** under § 1915(e)(2)(B)(i), such that Plaintiff remains free to file a **paid complaint** regarding the ten dollar property loss. However, plaintiff's claim for personal injury under the FTCA should be **DENIED and DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief can be granted.

Additionally, **IT IS RECOMMENDED** that Plaintiff's access to courts claim regarding his limited access to books and legal materials be **DENIED and DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies as mandated by the provisions of 42 U.S.C. §1997e. Finally, **IT IS RECOMMENDED** that Plaintiff's other Bivens' claims (denial to

---

[4] The undersigned notes that Plaintiff has been transferred back to the West Coast, and he is currently incarcerated at the federal prison in Victorville, California. [Doc. #7.]

access of courts due to the missing stamps, retaliation, and transfer) be **DENIED** as frivolous and for failing to state a claim for which relief can be granted, pursuant to under 28 U.S.C. §1915(e)(2)(B) and **AND DISMISSED WITH PREJUDICE**.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions AVCepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this 2nd day of October, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE